UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEESA S., <br><br>    Plaintiff, <br><br>    v. <br><br> KILOLO KIJAKAZI, <br>  ACTING COMMISSIONER OF <br>  SOCIAL SECURITY,[1] <br><br>    Defendant. | No. 20 CV 1874 <br><br> Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

  Plaintiff Leesa S. brings this action under 42 U.S.C. § 405(g) for judicial review of the Social Security Administration's (SSA) decision denying her application for benefits. For the following reasons, plaintiff's request to reverse and remand the SSA's decision is granted, the Acting Commissioner of Social Security's motion for summary judgment [30][2] is denied, and the case is remanded to the agency for further proceedings.

## Background

  In August 2012, plaintiff filed an application for child's insurance benefits, alleging a disability onset date of April 29, 2012. [24-3] 15. Plaintiff filed a second Title II application for a period of disability and her own wage-earner's disability benefits, also alleging an April 29, 2012 onset date. [*Id.*] Plaintiff's claims were denied initially and on reconsideration. [*Id.*]. Plaintiff then requested a hearing, which was held by an administrative law judge (ALJ) on November 15, 2018. [*Id.*] 31-78. In a decision dated February 15, 2019, the ALJ found that plaintiff was not disabled and denied her applications for benefits. [*Id.*] 15-24. The Appeals Council denied review on January 30, 2020 [*id.*] 1-5, making the ALJ's decision the agency's final decision. *See* 20 C.F.R. §§ 404.955, 404.981. Plaintiff timely appealed to this Court [1], and the

---

[1] In accordance with Fed. R. Civ. P. 25(d), Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as the defendant in this case in place of the former Commissioner of Social Security, Andrew Saul.

[2] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [24], which refer to the page numbers in the bottom right corner of each page.

Court has subject-matter jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).[3]

## Legal Standard

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment or combinations of impairments meets or equals any listed impairment; (4) whether the claimant is unable to perform her past relevant work; and (5) whether the claimant is unable to perform any other available work in light of her age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019)). But the standard "is not entirely uncritical. Where the Commissioner's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Brett D. v. Saul*, No. 19 C 8352, 2021 WL 2660753, at *1 (N.D. Ill. June 29, 2021) (internal quotation marks and citation omitted).

## Discussion

### A.     ALJ's Decision

At step one of her written decision, the ALJ found that plaintiff had not engaged in substantial gainful activity except for the periods between (1) September 2015 and February 2016, and (2) May 2016 and September 2016. [24-3] 18-19. At step two, the ALJ determined that plaintiff had the following severe impairments: post-traumatic stress disorder, anxiety, bipolar disorder, and substance use disorder. [*Id.*]

---

[3] The parties have consented to the exercise of jurisdiction in this case by a United States Magistrate Judge. [11].

2

19. At step three, the ALJ ruled that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. [*Id.*] 19-20. Before turning to step four, the ALJ determined that plaintiff had the residual functional capacity (RFC) to perform a full range of work at all exertional levels subject to several non-exertional limitations. [*Id.*] 20-23. More specifically, plaintiff was limited to work involving simple instructions, routine tasks, simple work-related decisions, and only simple and routine changes and pressures in the work environment. [*Id.*] 20. The ALJ also found that plaintiff could "interact with others sufficiently in a work setting with reduced social demands, defined as no work with the public on a continuous basis." [*Id.*]. At step four, the ALJ found that plaintiff had no past relevant work. [*Id.*] 23. At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that plaintiff could perform, such as housekeeping cleaner (300,000 jobs), mail sorter (100,000 jobs), and hospital food service worker (100,000 jobs).

Plaintiff argues that the ALJ's decision should be reversed for two reasons. First, plaintiff contends that the ALJ erred in determining her RFC. In support, plaintiff maintains that (A) substantial evidence does not support the ALJ's decision to reject the state agency psychologists' opinions that plaintiff could perform only 1-2 step tasks, (B) the ALJ did not adequately account for several mental limitations that the state agency psychologists included in the checkbox section of their evaluations, and (C) the ALJ should have included a bathroom-break limitation in the RFC to account for plaintiff's interstitial cystitis. *See* [25] 4-11; [32] 2-10. Second, plaintiff argues that the ALJ erred in evaluating her subjective symptom allegations. *See* [25] 11-14; [32] 10-16. The Court agrees with plaintiff that the ALJ committed reversible error by failing to account for the state agency psychologists' opinions that plaintiff was moderately limited in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.[4]

### B. The ALJ Did Not Address Plaintiff's Moderate Limitation in Getting Along with Coworkers or Peers without Distracting Them or Exhibiting Extreme Behavior.

"A disability claimant's RFC describes the maximum she can do in a work setting despite her mental and physical limitations." *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014). "An ALJ must evaluate all relevant evidence when determining an applicant's RFC[.]" *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012).

An ALJ "must explain [her] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Moira L. v. Kijakazi*, No. 19 C 2687, 2022 WL 846469, at *2 (N.D. Ill. Mar. 22, 2022) (internal quotation marks omitted). In evaluating opinion evidence, the ALJ "is not required to credit every part of a medical opinion just because he credits one part." *Stephens v. Colvin*, No. 14-cv-3117,

---

[4] Because this issue is dispositive, the Court need not address plaintiff's other arguments.

2016 WL 1271050, at *10 (N.D. Ill. Mar. 29, 2016), *aff'd*, 671 F. App'x 390 (7th Cir. 2016). But the ALJ must explain why she adopted some parts of a medical source's opinion but not others. *See Mildred B. v. Kijakazi*, No. 19 CV 3532, 2022 WL 1746849, at *2 (N.D. Ill. May 31, 2022); *Diaz v. Berryhill*, No. 16 C 11149, 2017 WL 4163959, at *2 (N.D. Ill. Sept. 20, 2017).

State agency psychologist Russell Taylor assessed plaintiff's mental RFC at the initial level on November 10, 2017. *See* [24-4] 87-89. Dr. Taylor found that plaintiff had moderate limitations in the following areas: (1) understanding and remembering detailed instructions; (2) carrying out detailed instructions; (3) maintaining attention and concentration for extended periods; (4) completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; (5) interacting with the general public; (6) getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; and (7) responding appropriately to changes in the work setting. [*Id.*] 87-88. In the narrative section of his report, Dr. Taylor explained:

> [Plaintiff] retains the mental capacity to understand, remember and concentrate sufficiently in order to carry out one or two-step instructions for a normal work period. She could make simple work related decisions. She could interact with others sufficiently in a work setting with reduced social demands. She could not work with the public on a continuous basis. She could adapt to simple, routine changes and pressures in the work environment.

[*Id.*] 89.

State agency psychologist R. Leon Jackson evaluated plaintiff's mental RFC at the reconsideration level on April 16, 2018. [24-4] 118-20. Dr. Jackson identified the same seven moderate limitations as Dr. Taylor and repeated verbatim Taylor's narrative summary of plaintiff's mental RFC. *See* [*id.*].

In formulating plaintiff's RFC, the ALJ gave "significant weight" to Dr. Taylor's and Dr. Jackson's opinions:

> I give significant weight to the DDS psychological evaluators (1A/9-11; 2A9-11); 5A/9-14; 6A/9-14). Their overall assessment of the claimant's residual functional capacity is very similar to the one contained in this analysis. One noteworthy difference is that I did not find the claimant limited to one or two-step tasks. It is worth noting that the DDS evaluators who did find her so limited, did so in October 2017, shortly after she had begun treatment for her conditions in June 2017.

4

> Subsequent treatment notes now in the record document good stability with her medications.

[24-3] 22.

Plaintiff contends that the ALJ erred because, despite giving significant weight to the agency psychologists' opinions, she included "no limitations that addressed [her] ability to maintain attention and concentration for extended periods, her ability to complete a workday or workweek without interruptions from psychologically-based symptoms, or her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes" in the RFC. [25] 8. The Acting Commissioner responds that the ALJ permissibly relied on the state agency psychologists' narrative summary of plaintiff's mental limitations, rather than the checkboxes, to formulate plaintiff's RFC. And because those narrative summaries adequately captured the limitations identified in the checkbox section of the psychologists' evaluations, the Acting Commissioner argues that no error occurred. *See* [31] 7-9.

As the Acting Commissioner observes, the Mental Residual Functional Capacity Assessment (MRFCA) forms that Dr. Taylor and Dr. Jackson completed have two relevant components. Section I of the form is a checkbox-type worksheet that is designed "'to ensure that the psychiatrist or psychologist has considered each of the[ ] pertinent mental activities and the claimant's or beneficiary's degree of limitation.'" *Capman v. Colvin*, 617 F. App'x 575, 579 (7th Cir. 2016) (quoting Program Operations Manual System DI 25020.010(B)(1). It was in this section where the doctors identified seven specific limitation in plaintiff's mental functioning. Section III, in contrast, is where a medical source is to "record and explain their conclusions in narrative format[.]" *Id.* at 578.

The Seventh Circuit "has declined to adopt a blanket rule that checked boxes in Section I of the MRFCA form indicating moderate difficulties in mental functioning need not be incorporated" into the claimant's RFC. *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015). "Worksheet observations, while perhaps less useful to an ALJ than a doctor's narrative RFC assessment, are nonetheless medical evidence which cannot just be ignored." *Id.* Although an ALJ "may rely on a narrative explanation" in formulating the claimant's mental RFC, "the ALJ still must adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections of standardized forms such as the . . . MRFC forms." *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019). Where an ALJ relies on a doctor's narrative formulation in determining the claimant's RFC, the narrative must "adequately encapsulate[ ] and translate[ ] those worksheet observations." *Varga*, 794 F.3d at 816.

In this case, it is unclear whether or how Dr. Taylor's and Dr. Jackson's narrative formulations encapsulated or translated plaintiff's moderate limitation in

5

getting along with coworkers or peers without distracting them or exhibiting behavioral extremes, which both doctors identified in the check-box section of the MRFCA. The only component of their narrative discussion that arguably touches on that limitation was the statement that plaintiff "could interact with others sufficiently in a work setting with reduced social demands." [24-4] 89, 120.

For purposes of this decision, the Court assumes without deciding that the doctors' narrative formulations adequately accounted for plaintiff's moderately limited ability to interact with coworkers without distracting them or exhibiting extreme behavior. Reversal is still required, however, because the ALJ neither adopted the entirety of the doctors' narrative formulations nor explained why she declined to do so. *See Mildred B.*, 2022 WL 1746849, at *2; *Diaz*, 2017 WL 4163959, at *2. The ALJ's RFC determination did not place any limitations on plaintiff's interactions with coworkers, and the ALJ accounted for plaintiff's need for a work setting with reduced social demands only by restricting her from continuously interacting with the public. *See* [24-3] 20 ("The claimant could interact with others sufficiently in a work setting with reduced social demands, *defined as no work with the public on a continuous basis.*") (emphasis added). The ALJ's failure to account for the agency psychologists' opinion that plaintiff required a work setting with reduced social demands because of her moderately limited ability to get along with coworkers without disrupting them or exhibiting extreme behavior was an error that requires remand. *Compare Mary C. v. Saul*, No. 1:20-cv-240-SEB-MPB, 2021 WL 736446, at *4-5 (S.D. Ind. Feb. 1, 2021) (where state agency reviewer found plaintiff moderately limited in ability to interact with coworkers without distracting them or exhibiting behavioral extremes, ALJ's finding that plaintiff "can tolerate occasional interaction with supervisors and co-workers but never with the general public" did not account for reviewer's opinion because "it did not touch upon the quality of and employer tolerance for the 'inappropriate' and 'distracting' interactions with co-workers"), *with Rabitoy v. Berryhill*, 17-cv-495-jdp, 2018 WL 1010219, at *1-2 (W.D. Wis. Feb. 21, 2018) (ALJ adequately accounted for plaintiff's moderate limitation in getting along with coworkers without distracting them by including limitation that plaintiff "cannot perform work requiring more than brief and superficial contacts with others").

The Acting Commissioner's arguments for affirming the ALJ's decision have no merit. First, the Acting Commissioner's brief fails to address plaintiff's argument respecting the ALJ's handling of the moderate limitation in plaintiff's ability to get along with coworkers without distracting them or exhibiting extreme behavior, *see* [31] 7-9, despite plaintiff's raising this issue in her opening brief, *see* [25] 8, 9-10. Second, and contrary to exaggerated statements in the Acting Commissioner's brief, ruling for plaintiff on this issue does not "require this Court to overturn recent Circuit law[.]" [31] 8. The cases on which the Acting Commissioner relies are not only non-precedential, but also distinguishable. None of the cases cited by the Acting Commissioner addressed the issue presented by this case: whether a remand is

6

required where the ALJ gave significant weight to the state agency psychologists' opinions but did not adopt–and did not explain why she was not adopting–part of the psychologists' narrative RFC summaries. *See Apke v. Saul*, 817 F. App'x 252, 256-57 (7th Cir. 2020) (addressing ALJ's rejection of treating physicians' opinions in favor of doctor whose opinion ALJ sought after administrative hearing); *Urbanek v. Saul*, 796 F. App'x 910, 915 (7th Cir. 2019) (considering whether ALJ properly based RFC determination on agency doctors' narrative conclusions that accurately "translate[d] their residual-functional-capacity recommendations" in checkbox section of their evaluations); *Pytlewski v. Saul*, 791 F. App'x 611, 616 (7th Cir. 2019) (considering whether state agency psychologists' narrative findings adequately accounted for all limitations identified in checklist section of their evaluations).

Finally, the Court cannot conclude that the ALJ's error was harmless. "In assessing whether an error is harmless, [a court] examine[s] the record to determine whether [it] can predict with great confidence what the result of remand will be." *Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021). The Court is unable to make such a prediction here. First, the Acting Commissioner has not made a harmless-error argument. *See* [31] 7-9. Second, the vocational expert's (VE) testimony suggests that a restriction in the RFC that reflected plaintiff's moderately limited ability to interact with coworkers or peers without distracting them or exhibiting extreme behavior may have affected plaintiff's ability to perform substantial gainful employment. When the ALJ asked the VE whether limiting plaintiff to "occasional interaction with supervisors and coworkers" would "have an effect on the jobs or their numbers," the VE testified that this limitation would not affect plaintiff's ability to work as a housekeeping cleaner, mail sorter, or hospital food service worker or reduce the number of such jobs in the national economy. [24-3] 73. However, in response to a question by plaintiff's attorney, the VE acknowledged that even if plaintiff were limited to occasional interactions with supervisors, the disruptive nature of those interactions could preclude competitive employment:

> Q: My next and separate question is, looking at the judge's limitation to occasional interaction with supervisors, if–during the occasional interaction, if the individual had certain days or times that during that interaction the individual was not able to communicate effectively, so was either crying or was overly anxious to where they–they couldn't hold a conversation with the supervisor about job duties, how often or how many times would that be tolerated?
>
> A: Well, again, people do get upset, so if it's just once in a while without a consistent pattern, that–that might be excusable, but if it's–if it's day by day or week by week where there's an experiential situation where the person is really not able to keep it together, then that would be a reason to lose the job also.

7

[*Id.*] 74-75.

Given this testimony, the Court does not have great confidence that the ALJ would reach the same result on remand. Although the VE testified that restricting plaintiff to occasional interactions with coworkers and supervisors would not affect the number of available jobs in the national economy, nothing in the ALJ's decision or the transcript of the hearing suggests why–or whether–the ALJ believed that restricting plaintiff to only occasional interactions with coworkers adequately accounted for her moderately limited ability to get along with coworkers without distracting them or exhibiting extreme behavior or her need for a work setting with reduced social demands. Furthermore, a mere quantitative limitation on plaintiff's exposure to coworkers and peers does not appear to account for either the quality of, or an employer's tolerance for, the distracting and extreme nature of plaintiff's interactions with coworkers or peers. *Accord Mary C.*, 2021 WL 736446, at *5 ("while the residual functional capacity adopted by the ALJ provides a quantitative limitation with regard to Plaintiff's exposure to coworkers and supervisors, it did not touch upon the quality of and employer tolerance for the 'inappropriate' and 'distracting' interactions with co-workers and supervisors that the state agency psychologists opined Mary C. would exhibit at some point during the workday or workweek").

## Conclusion

Plaintiff's request to reverse and remand the SSA's decision is granted, and the Acting Commissioner's motion for summary judgment [30] is denied. The decision of the SSA is reversed, and, in accordance with the fourth sentence of 42 U.S.C. § 405(g), this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: February 23, 2023**